## OSGOOD vs. HOWARD.

Where a tenant at will erected a dwelling house and other buildings on the land, with the express consent of the landlord, and died; and his administrator sold them to a stranger;—it was *held* that the purchaser might maintain trover for them, against the owner of the land.

THIS was an action of trover for a dwelling house, barn and shop; and was tried before *Parris J.* upon the general issue.

It was admitted that the defendant, *Joseph Howard*, was owner of the land on which the buildings were erected; and it was proved that he had permitted his son *Henry* to occupy the land; by whom the buildings were erected, with the consent and assistance of the defendant. Testimony was adduced tending to prove that the aid thus rendered by the defendant was gratuitous, and without any intention of claiming any interest in the buildings thus erected. *Henry* being dead, these buildings were sold to the plaintiff by his administrator.

The defendant contended that this action would not lie. But the judge ruled otherwise; and the cause was committed to the jury upon the points of property in the plaintiff, and a conversion by the defendant; both which they found for the plaintiff; and the question of law was saved for the farther consideration of the court.

*N. Emery*, for the defendant, considered the maintenance of the action as a violation of all legal principles relating to its subject matter. The dwelling house was annexed to the freehold. It is not *bona et catalla.* Ejectment will lie for it. *Elwes v. Maw,* 3 *East,* 38. Burglary and arson may be committed on it. 1 *Lev.* 58; *Co. Lit.* 118. Things annexed to it go to the heir, and not to the executor; 2 *Com. Dig.* 130, 131; and *a fortiori* the house itself. No title, therefore, could have passed to the plaintiff; nor could this species of property be sued for in this form of action.

*Fessenden*, for the plaintiff, cited 1 *H. Bl.* 260, note; *Elwes v. Maw,* 3 *East* 38; *Lawton v. Lawton,* 3 *Atk.* 13; *Fitzherbert v. Shaw,* 1 *H. Bl.* 259; *Bull. N. P.* 94; *Penton v. Robart,* 2 *East*

88; *Taylor v. Townsend,* 8 *Mass.* 411; *Washburn v. Sproat,* 16 *Mass.* 449; *Wells v. Banister,* 4 *Mass.* 514; *Ricker v. Kelly,* 1 *Greenl.* 117; 3 *Dane's Abr.* 199; *Tobey v. Webster,* 3 *Johns.* 461.

MELLEN C. J. delivered the opinion of the Court, in *Cumberland,* in *August* following.

The question in this case seems to be a new one; or in other words, the decision of it requires the application of certain well settled principles to certain facts, where the application of them appears to be considered as a novelty. The facts before us are few and simple, and we wish to be understood as not extending our decision beyond those facts as they have been found by the jury. Cases, whose general character might resemble the present, may easily be imagined to involve several interesting and intricate inquiries; the solution of which might be attended with many difficulties. But the finding of the jury has excluded them all from the case under consideration. The buildings whose value is demanded in this action of trover were the absolute property of *Henry Howard,* the deceased, at the time of his death. The land on which they were erected was then, and continues to be the property of the defendant. They were erected on the land by his express consent. The buildings have been fairly purchased by the plaintiff, and they are his absolute property; and the defendant has converted them to his own use. Now, the question is, why should not this action be maintained? Almost all the cases which have been cited on both sides, are those between lessor and lessee, or heir and executor; and they were decided upon principles of policy, or the mere nature of the property in question, independently of any express contract in relation to the subject; the former, according to those usages between landlord and tenant, which were established and respected for the benefit of trade, and, in some instances, of husbandry; and the latter, accordingly as the subject in question partook most of the realty or personalty—whether attached or not to the freehold. We apprehend that such cases cannot be of much use in the determination of the case at bar; for in this, the express agreement between the defendant and his son as to the erection of the buildings converted by the defendant, places the subject

on other grounds, and at once settles the respective rights of the owner of the land and the owner of the buildings. It is not denied that if one erects a building on the land of another wrongfully, the building immediately becomes attached to the freehold, and the property of the owner of the land; but the case is different in respect to erections which are sanctioned by the relation between landlord and tenant; and for reasons still stronger, when buildings are erected by one man on the land of another, under his express license and agreement, as was the fact in the instance before us. The case of *Wells v. Banister & al.* 4 *Mass.* 514, seems directly in point. There the facts were that a son built a dwelling house on his father's land, and by his express permission. The court, then consisting of *Parsons C. J.* and *Sewall* and *Parker* justices, in giving the opinion say " the property of the house is personal property of the son, he having no estate in the land." We understand that, among the profession, this is the principle recognized and acted upon in practice; that such property is considered personal, and is accordingly always sold on execution in the same manner as all other personal estate is sold at auction. Should we decide this cause in opposition to the abovementioned principle and practice, we should open a door to innumerable frauds, which might be effectually committed with impunity. A person might erect expensive buildings on the land of a friend in whom he could confide, by his express permission; and thus, in case of failure in business, perhaps a contemplated or intended failure, he would enjoy a home and ample accommodations, at the expense of his defrauded creditors; for if the buildings became the property of the owner of the land, then his creditors could not seize them on execution; and the friend could not be adjudged the trustee of the builder, in consequence of their standing on his land, because the houses are neither goods, effects or credits of the builder. We do not perceive any reason why there should not be

*Judgment on the verdict.*