JOSEPH B. PEAKS *vs.* MELVIN D. HUTCHINSON.

Piscataquis.     Opinion August 29, 1902.

*Fixtures. Deed. Husband and Wife. R. S., c. 61; c. 103, §§ 7–9. Stat. 1866, c. 52.*

A building does not become a part of the realty when erected on another's land under an agreement that it shall be the personal property of the builder.

Husband and wife may make such contracts with each other, under the statute of 1866, c. 52, (R. S., c. 61) which provides that: "The contract of any married woman, made for any lawful purpose, shall be valid and binding, and may be enforced in the same manner as if she were sole."

A building erected by one on the land of another under an agreement that it shall remain the personal property of the builder does not pass by a conveyance of the land to a bona fide purchaser without notice, although from its character, purpose and mode of use it appears to be a part of the realty.

On report.   Judgment for defendant.

Forcible entry and detainer to obtain possession of a certain stable situated on a portion of village lot No. 40 in Dover, Piscataquis county.

It appeared that the stable in question was built by the defendant on the land above described, which was then owned by his wife, under an agreement that when erected it should be his.

The case is stated in the opinion.

*J. B. Peaks,* for plaintiff.

*Henry Hudson and Frank E. Guernsey,* for defendant.

SITTING: WHITEHOUSE, STROUT, SAVAGE, POWERS, PEABODY, SPEAR, JJ.

WHITEHOUSE, J.   This is a process of forcible entry and detainer commenced by the plaintiff against the defendant as a disseizor, to obtain possession of "a certain stable" situated on land therein described and alleged to be a part of the realty.   The defendant pleads the general issue and for a brief statement of his defense says that the stable in question was erected by him with his own means

upon the lot described in the plaintiff's declaration, with the knowledge and consent of his wife, Susie M. Hutchinson, who had title to the lot, with the dwelling-house thereon, before her marriage. The plaintiff claims title by virtue of a conveyance from Susie M. Hutchinson of the real estate on which the stable is standing. The case comes to this court on report.

It appears from the facts admitted that Susie M. Hutchinson, the wife of the defendant, commenced a libel for divorce against him on the 30th day of September, 1898; that the plaintiff acted as her attorney in the prosecution of the libel, and continued to act as her attorney until October 3, 1899, when she gave him a deed of the land described in this complaint, "with all the buildings situated on said lot;" and the following day the plaintiff commenced this process of forcible entry and detainer.

It appears from the uncontroverted testimony of the defendant that in 1892, when he and his wife were occupying the house on the lot in question, it was agreed between them that he should build a stable on the lot at his own expense and that the stable should be and remain his property. In pursuance of this agreement, the defendant erected the stable in question, thirty-two feet long and twenty-eight feet wide, paying for all the labor and materials with his own money. The stable was supported by twenty-four granite posts set in the ground, and was situated about twenty-five feet from the house. The next year after the erection of the stable, a shed was constructed to fill the space between the stable and the ell of the house, but without joining the sills. A serviceable connection was thus made between the shed and stable.

Upon these facts the plaintiff contends, in the first place, that the agreement between the defendant and his wife with respect to the stable was not a contract which a married woman had authority to make; but he further contends that if this contract is held to be a valid one as between the parties, he was an innocent purchaser of the real estate for value, without notice of any agreement that the stable should remain personal property, and that in any event it passed to him as a part of the real estate under his deed of October 3, 1899.

In support of his first proposition the plaintiff cites *Doak* v. *Wiswell*, 38 Maine, 569, in which it was held that a married woman was not competent to restrict or enlarge the rights of her husband over her property or to contract with him in reference to it; that the husband's interest in the real estate of his wife was acquired by operation of law and not by contract, and that her consent to the erection of buildings on her land by her husband was of no effect. But an examination of the facts upon which that decision rests clearly shows that it is not an authority in the present case. In that case the parties were married in 1831, and the buildings in question were erected by the husband on the land of his wife in 1839, long prior to the passage of the most important legislative enactments in this state enlarging the rights of married women.

In *Blake* v. *Blake*, 64 Maine, 177, the parties were married in 1869, and the building there in question was erected by the husband on the land of his wife in the year 1870. Between 1839 and 1870, there had been twelve different enactments of the legislature, including the broad and comprehensive one of 1866, all designed to enlarge a married woman's powers respecting the preservation and protection of her separate property and personal rights. The act of 1866 (c. 52) was as follows: "The contracts of any married woman made for any lawful purpose, shall be valid and binding and may be enforced in the same manner as if she were sole." The provisions of all these enactments appear in a condensed form in chapter 61 of the revised statutes.

It was accordingly held in that case that a man who had built an addition to the stable and made valuable improvements on the house, standing on the land of his wife, under her promise to pay for them, was entitled, after a dissolution of the marriage by divorce, to recover for such improvements and expenditures. Quoting the first four sections of chapter 61 of the revised statutes of 1871, the court say in the opinion: "If the wife can convey to her husband, she may be bound by the covenants of her deed. If the husband is liable for the rent of his wife's estate to her, she is none the less bound to the faithful performance of the covenants contained in such lease. . . .

"The result is that the wife, having the general and unrestricted

power of making any and all contracts in relation to her estate, its sale, lease, improvement, with the further right to make contracts for any lawful purpose, may contract with whomsoever she may choose. She may contract with her husband equally as with any one else." See also *Wentworth* v. *Wentworth*, 69 Maine, 247.

It is true that in *Haggett* v. *Hurley*, 91 Maine, 542, 41 L. R. A. 362, it was held that the disabilities of the wife have not been so far removed by our enabling statutes as to empower her to form a business partnership with her husband and thereby subject her separate estate to debts contracted by the partnership. Among the reasons assigned in the opinion for this conclusion is the fact that in the revision of the statutes (c. 61, § 4, R. S., 1871 and 1883) a married woman is made liable only for debts contracted "in her own name." It is suggested that these words, which do not appear in the original act of 1866, seem to limit her power to contract to such contracts as she may make "in her own name," and not in a partnership name. But referring to *Blake* v. *Blake* and *Wentworth* v. *Wentworth*, supra, the court add: "We make no decision here inconsistent with those decisions or opinions. We do not decide that a wife may not make a valid contract with her husband, nor that she may not join with her husband in contracts with other parties, nor that she may not become a surety for her husband, nor that she may not make contracts through him as her agent. All these might be contracts "in her own name."

So also in *Pinkham* v. *Pinkham*, 95 Maine, 71, it was held that a wife cannot bar her right and interest by descent in her husband's real estate by a release to him during coverture. But the legislature had previously specified the methods by which dower might be barred (R. S., c. 61, § 6; c. 103, §§ 7, 8 and 9); and it was considered that such important provisions of existing law, designed expressly for the protection of the rights of the wife in the estate of her husband, ought not to be declared abrogated or superseded by subsequent enactments, without a more definite expression of the legislative purpose.

An agreement by the wife that a stable erected on her land by her husband, with his money, shall remain his property, is readily distinguishable from those in the cases last cited, and is not open to

the objections which there prevailed.  Our erabling statutes during the last sixty years were obviously intended to ·confer upon a married woman important rights and powers not previously enjoyed, and it is not the province or. the duty of the court to nullify these statutes and defeat the obvious purpose of them by excluding from the opera-tion of their general terms each particular contract that may arise, on the ground that it is not within the intendment of any of the acts.   If ·a married woman is empowered to convey, lease and manage her real estate, to make any and all contracts "in her own name for any law-ful purpose," and "may contract with her husband equally as with any one else," there seems to be no substantial reason why the agree-ment in question, which had the effect to confer upon her property a benefit without a burden, does not easily fall within the manifest pur-pose as well as the comprehensive language of the statutes.   It is difficult to conceive of any contract which a married woman could more appropriately be deemed authorized to make, respecting the management of her real estate.   It is accordingly the opinion of the court that the plaintiff's grantor was empowered to make the agree-ment in question with her husband that the stable should remain his property.

· But the plaintiff still insists that as a bona fide purchaser of the real estate without notice of the defendant's claim to the stable, he ought not to be affected by it even if it is held valid as between the original parties.

· The case discloses no evidence respecting the consideration of the conveyance to the plaintiff except that imported by the seal and the recital in the deed that it was "in consideration of $1,000 paid" by the plaintiff.   It has been seen that the plaintiff was acting as attorney for his grantor at the time of this conveyance to him, and commenced this process the next day after he received the deed. ·The defendant contends that the court would be authorized to infer from these circumstances that, as the wife could not maintain an action against her husband in her own name, the conveyance was made to the plaintiff, her attorney, for the sole purpose of instituting this process, and that he must have had notice of the controversy in regard to the stable.

If it be assumed, however, that the plaintiff was a bona fide purchaser for value without notice, his contention that the stable passed to him as a part of the realty is not supported by the rule of law which has hitherto prevailed in this state in this class of cases. *Russell* v. *Richards*, 10 Maine, 429, 25 Am. Dec. 254; *Hilborne* v. *Brown*, 12 Maine, 162, and *Tapley* v. *Smith*, 18 Maine, 12, established the principle that a building erected by one man on the land of another, by his permission, remains the personal property of him who erects it and does not pass by a conveyance of the land to a third person, although from its character, purpose and mode of use it appears to be a part of the realty, and the conveyance is to a bona fide purchaser without notice. These decisions have never been overruled in this state, although it must be admitted that they have been somewhat discredited by the comments of our own court in more recent decisions, and the rule established by them is undoubtedly contrary to the great weight of authority relating to this question. In *Fifield* v. *Me. Cent. R. R. Co.*, 62 Maine, 77, the court say: "The case of *Russell* v. *Richards*, 10 Maine, 429, 25 Am. Dec. 254, and subsequent cases, establish the doctrine here that bona fide purchasers, who even without notice acquire title to land, are not entitled to claim such structures as a house, store or mill standing on the land at the time of purchase, if such buildings were at such time the property of a third person, although from their situation upon the land they had the appearance of being a part of the realty. The case of *Russell* v. *Richards*, does not accord with the adjudged cases in Massachusetts and New Hampshire in this respect, and the general course of decisions is rather opposed to it. See enumeration of cases compared in the extensive notes to the case of *Elwes* v. *Mawe*, 2 Smith's Lead. Cas., 99." (9th ed., p. 1423.)

Again in *Dustin* v. *Crosby*, 75 Maine, 75, the court say: "*Russell* v. *Richards*, 1 Fairf. 429 (10 Maine) is not an opposing authority. That case was decided upon the ground of estoppel, and even that case has been a good deal criticised by other courts. Certainly its doctrine is not to be extended."

With respect to the effect of such an agreement as against third persons, the Am. & Eng. Ency. of Law says: "The weight of

authority is to the effect that a subsequent purchaser or mortgagee of the land without notice of the agreement is not affected thereby. But in Alabama, Maine and New York the rule appears to be otherwise, and a subsequent purchaser or mortgagee cannot claim the chattels, though ignorant of the agreement by which they were to retain their personal character." Vol. 13, page 628, title "Fixtures." And the numerous authorities there cited appear to warrant the statements in the text. See also *Fuller-Warren Company* v. *Harter*, 110 Wis. 80, and elaborate note in 84 Am. St. Rep. 867.

In view of the general policy of our law to constitute the registry of deeds the true source of information respecting titles to real estate, it may seem that the Maine rule has no stronger support in equity than in authority, since under its operation an innocent purchaser of land may find incumbrances upon it against which no ordinary care or vigilance on his part would afford any safeguard or protection. But if it be deemed more reasonable and just that such an agreement should not be effectual against any person except the original parties thereto and those having actual notice thereof, unless it is in writing and recorded in the registry of deeds, the legislature can appropriately so declare.

*Judgment for the defendant.*