JOHN P. SQUIRE & COMPANY, Appellant, *vs.* CITY OF PORTLAND.

Cumberland.    Opinion December 13, 1909.

*Taxation. Assessment. Abatement. Foreign Corporation. Corporate Residence. Fixtures. Trade Fixtures. Right to Remove. Statute, 1895, chapter 122, section 3; Revised Statutes, 1883, chapter 6, section 93; 1903, chapter 1, section 6, paragraph VII; chapter 9, sections 73, 74.*

Revised Statutes, chapter 9, section 74, barring "resident owners" who do not "make and bring in true and perfect lists of their polls and all their estates and personalty not by law exempt from taxation," from the right to make application to the assessors for an abatement of taxes, applies to "resident owners" only, and does not apply to a corporation which is a resident of another State, and such corporation may maintain an appeal from the refusal of the assessors to abate its taxes because it did not furnish a list of its taxable property.

The residence of a corporation is in the State of its creation, although it may carry on business in another State.

A cold storage refrigerator installed by the lessee of a building is not taxable to the lessee as personalty, where it was so annexed to the building that it could not be removed without material injury to the realty, and would then be a worthless mass; it being presumed to have been intended to become part of the realty, and not a trade fixture.

Trade fixtures substituted for essential parts of the leased premises, and not additions thereto, are not removable and are presumed to be permanent additions.

"Trade fixtures" is a term usually used to describe property which a tenant has placed on rented real estate to advance the business for which the realty is leased, and may, as against the lessor and those claiming under him, be removed at the end of the tenant's term.

A fixture can be removed by a tenant only when it will cause no material injury to the estate.

On report. Appeal by plaintiff. Sustained.

Appeal to the Supreme Judicial Court, Cumberland County, by the plaintiff from the decision of the assessors of the city of Portland refusing to abate a tax for the year 1908, and brought under the provisions of Revised Statutes, chapter 9, section 79. A motion to dismiss the appeal was filed, and the case was then reported to the Law Court on an agreed statement of facts.

The case is stated in the opinion.

*Chase Eastman*, for plaintiff.

*Emery G. Wilson*, for defendant.

SITTING: WHITEHOUSE, SAVAGE, SPEAR, CORNISH, KING, BIRD, JJ.

CORNISH, J. This is an appeal from the decision of the assessors of the city of Portland refusing to abate a tax levied upon the appellant for the year 1908. Under the agreed statement of facts two questions are involved, first, whether the appellant can mantain this appeal not having furnished to the assessors a list of its taxable property. Second, whether the property in question was taxable to the appellant on April 1, 1908, as personal property.

1. The appeal is clearly maintainable. R. S., ch. 9, sec. 73, provides that "before making an assessment, the assessors shall give seasonable notice in writing to the inhabitants," etc., to make and

bring in true and perfect lists of their polls and all their estates real and personal, not by law exempt from taxation. Under R. S., chap. 1, sec. 6, par. VII, "the word inhabitant means a person having an established residence in a place." R. S., chap. 9, sec. 74, provides that "if any resident owner, after such notice does not bring in such list" he is barred of his right to make application for abatement, unless he offers such list with his application and satisfies the assessors that he was unable to offer it at the time appointed. The only persons barred from making the application for abatement are "resident owners." Prior to 1895 this last section read "if any person," etc., but in section 3 of chapter 122 of the Public Laws of 1895 it was provided that "any non-resident against whom a tax has been assessed shall not be debarred of his right to make application to the assessors for an abatement of his taxes nor to appeal from their decision according to the provisions of this Act, by his failure to bring in a list of his estate to the assessors, but in such case no costs shall be allowed to the appellant." In the revision of 1903, therefore, the words "any person" in R. S., 1883, chap. 6, section 93, were changed to "any resident owner." The cases cited by the defendant on this point, *Boothbay* v. *Race*, 68 Maine, 351 (1878) and *Orland* v. *Co. Comm'rs*, 76 Maine, 462 (1884), were decided prior to this amendment, while in *Edwards Mfg. Co.* v. *Farrington*, 102 Maine, 140, (1906) it expressly appeared that the plaintiff was a Maine corporation and an inhabitant of Augusta for taxing purposes, page 143.

In the case at bar the appellant on the contrary, is a corporation organized under the laws of and is a resident of New Jersey, as the residence of a corporation is in the State of its creation, although it may carry on business in another State. *Bank of Augusta* v. *Earl*, 13 Pet. 519, 588; *Shaw* v. *Quincy Mining Co.*, 145 U. S. 444; *Hammond Beef Co.* v. *Best*, 91 Maine, 431.

It follows therefore that the appellant being neither an "inhabitant" under section 73, nor a "resident owner" under section 74, was not obliged to furnish the assessors with a list of its taxable property and the objection to the maintenance of the appeal is not well taken.

2. Was the property in question legally taxable to the appellant on April 1, 1908? In the opinion of the court it was not. This property which was assessed as personal property is called a refrigerator; but from the description given it really consisted of several cold storage rooms forming a part of a leased building. If taxable at all to the appellant it must be on the ground that it was a trade fixture, removable by the tenant during the lease and therefore owned by it during that time as personal property. From the agreed statement it appears that the appellant has occupied a store in Portland since 1901 under a written lease, the terms or conditions of which, however, are not given; that a refrigerator or receptacle for the storage of meats and provisions has been constructed by the appellant during its occupancy; that "said refrigerator is constructed of wood and occupies the whole width of the building aforesaid at one end from wall to wall, a distance of about twenty-three feet and is in length about thirty feet. It occupies the basement and the five floors immediately above the same and is constructed by sheathing the interior walls of the building with wood, and packing between this wood and said interior walls, shavings to the thickness of some six or eight inches. A double wall of wood similarly packed with shavings constitutes the front of the refrigerator, extending from side wall to side wall, and extends from the basement to the roof of the building, six stories in all. The basement of the refrigerator is separated from the story immediately above, as is that story from the next succeeding story, and so on, up to and including the third story above the basement, by a double wooden floor, filled with wood shavings, of some eighteen inches in thickness, which floors replace the original floors of the building which were torn out by the petitioner with the consent of the lessor in the construction of the refrigerator. It is admitted that said refrigerator could be removed from the said premises only after having been taken to pieces."

Did this constitute a trade fixture or was it a part of the real estate at the time of the assessment?

There is authority for holding that even granting this to be a trade fixture, it became a part of the realty when annexed and

remained so until actually severed.    Ewell on Fixtures, 2nd Ed. page 122, states the doctrine in this language :

"The nature of this right of removal has been explained in two ways :  by supposing that the chattel nature of the thing is preserved after its annexation, or by considering that the thing ceases to be a chattel by being affixed to the land, and becomes real property, but reducible again to a chattel state by separation from the realty. There is some confusion and looseness of expression among the authorities on this subject, occasioned probably by the fact that in some relations and for some purposes, as in favor of execution creditors, or the executors of a tenant, the chattel nature of the thing is not lost by its annexation.    For many, if not most purposes, however, during the continuance of the annexation, the thing is treated as a parcel of the realty ; and though it is in the power of the party making the annexation to reduce the thing again to the state of goods and chattels by severance, yet until so severed, it remains a part of the realty ; and this seems to apply as well to trade fixtures as to other fixtures." See also *Preston* v. *Briggs*, 16 Vt. 124 ; *Bliss* v. *Whitney*, 9 Allen, 114 ; *Stockwell* v. *Marks*, 17 Maine, 455 ; *Davis* v. *Buffum*, 51 Maine, 160 ; *Sawyer* v. *Long*, 86 Maine, 541.    Under these authorities, the assessment being laid while the annexation continued it was invalid.

But the property in the case at bar never constituted a fixture. It is undoubtedly true that the rules of law defining fixtures have grown less rigid in later years and especially is this true of trade fixtures as between lessor and lessee.    It is also true that as to such fixtures the intention of the party making the annexation is given special prominence in applying the rule and that the burden of showing the existence of the requisites for a merger is upon the party claiming such merger.    *Hayford* v. *Wentworth*, 97 Maine, 347.    The three requisites specified in the case last cited are physical annexation, adaptability or usableness, and intention. The first two of these requirements are fully met in the case at bar, as the description before given clearly shows.    As to the third, the intention of the lessee, that must be proved not by the unrevealed and secret intention of the party which would be well nigh impossi-

ble, but by the facts and circumstances including the relations and the conduct. It is more a matter of inference than of declaration. Were it a question of intention as expressed subsequently, the attitude of the appellant in this suit, resisting the claim of a fixture and insisting upon the merger would have great force, because it would be extremely difficult for the lessee to hereafter sustain such a claim in view of the position taken here. But the alteration made in this building by the lessee do not possess the elements of a trade fixture. "Trade fixtures" is a term usually used to describe property which a tenant has placed on rented real estate to advance the business for which the realty is leased and may as against the lessor and those claiming under him, be removed at the end of the tenants term. Words & Phrases, Vol. 8, page 7042; Ewell on Fixtures, page 129. This definition embraces a large variety of additions and erections, of which the books are full, as the temporrary partition in *Hanson* v. *News Pub. Co.*, 97 Maine, 99; a wash down, syphon water closet in *Hayford* v. *Wentworth*, 97 Maine, 347; an ice chest, consisting of a large and heavy wooden box lined with zinc, in *Park* v. *Baker*, 7 Allen, 78; bowling alleys nailed to the floor, in *Hanrahan* v. *O'Reilly*, 102 Mass. 201; boilers, engines, shafting, etc., removable without material injury to the building, in *Bergh* v. *Herring-Hall-Marvin Co.*, 136 Fed. 368; bakers' ovens and boilers, in *Baker* v. *McClurg*, 198 Ill. 28, 64 N. E. 701; temporary sheathing, partitions and a cold storage box, attached by strips and nails to the wall and floor, in *Ward* v. *Earl*, 86 Ill. App. 635. But all these cases differ from the case at bar in two essential particulars; first, they involved addition and not substitution, and second, the fixtures could be removed without substantial injury to the realty.

It is a well recognized principle that trade fixtures which are in substitution for essential parts of the leased premises and not additions thereto are not removable but are presumed to be permanent additions. Cyc. 1066; Ewell on Fixtures, page 146, note. This is but another way of stating that this fact when proved has great and possibly controlling weight upon the question of intention. In

*Felcher* v. *McMillan*, 103 Mich. 494, 61 N. W. 791, the tenant removed the pillars, the partitions, sewers and floors in the building occupied by him replacing them by others, more expensive but better suited to his business; held that the latter became a part of the realty and could not be removed as trade fixtures. The court say :

"The lessees chose to remove the pillars, the partitions, the sewers, the cement floor, and to replace them by others which they considered better suited to their business. If they chose to replace wooden pillars with iron ones, plate-glass fronts and partitions with refrigerators and mirrors solidly built in the partition walls, and to take up the sewers and floors, and replace them with others better and more expensive, the new ones do not thereby become trade fixtures, subject to removal by the tenant. The law does not permit tenants to remove fixtures which are built into the building and become a part of it." In *Bovet* v. *Holzgraft*, 5 Texas, Civ. App. 141, 23·S. W. 1014, a new stairway was substituted for an old one. Held that the former became a part of the realty and irremovable by the tenant. See also *Ashby* v. *Ashby*, 59 N. J. Eq. 536, 46 Atl. 528.

The tenant in the case at bar tore out the original floors in the rear thirty feet of the building and replaced them with double wooden floors eighteen inches thick filled with wood shavings. When completed the new floor simply took the place of the old and became a part of the building. They could no more be removed by the tenant than the original.

Another principle equally well settled is that the right of removal can only be exercised when it causes no material injury to the estate. The value of this principle also is its bearing upon the question of intention. But it is a rule universally recognized and nowhere more carefully than in the cases first cited where the right of removal was granted, it being proved that no substantial injury would ensue. In *Collamore* v. *Gillis*, 149 Mass. 578, a baker's oven, built of bricks and mortar, and so united with the building that the two were inseparable without the destruction of the oven

and a substantial injury to the building, was held not to be a removable trade fixture.

"Where the chattel is so annexed that it cannot be removed without material injury to the realty it would ordinarily be a necessary inference that the intention was not to remove it," says this court in *Hayford* v. *Wentworth*, 97 Maine, at page 350, supra. That necessary inference must be drawn here. The appellant did not place any fixture in the building that it intended to remove. A part of the structure itself was changed and remodelled. It was for the most part a case not of construction but of reconstruction, not of addition but of substitution. Floors were removed and thicker floors were substituted. The walls were doubled with a thickness of six inches of shavings between, and a similar double wall was constructed to separate these several rooms from the rest of the building. To remove all this would be to leave the building with thirty feet in the rear without floors and open from basement to roof. And after removing what was put in, the tenant would have not a structure or machine the parts of which could fit into one another and be reassembled and set up in some other place, but a worthless mass of old lumber, hardware and shavings. The burden of proof as to merger is fully sustained here, by the character of the changes made, by the fact of substitution, by the material injury to the building consequent upon removal, and by the valueless condition of the so-called fixture when removed. The inference is irresistible that the property became a part of the building itself and that the appellant is correct in its contention that it had no ownership therein.

Appeal sustained with costs and case remanded to the court at nisi prius for the determination of the question of over-valuation in accordance with the stipulation of the parties.

*So ordered.*