PAUL WEBB, TRUSTEE, *vs.* THE NEW HAVEN THEATRE
COMPANY.

Third Judicial District, Bridgeport, April Term, 1913.
PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, Js.

Whether articles annexed to the realty thereby become fixtures or re-
main personal property, depends largely upon the intention with
which they were attached, as that may be indicated by all the facts
in the case. The character of the annexation, the nature and adap-
tation of the articles annexed to the purposes to which the building
is appropriated, and the relation of the party making the annexa-
tion to the property in question, are all to be considered.

A lessee of premises not at the time adapted to the purposes for which
both parties understand they are to be used, who installs such fix-
tures thereon as his trade or business requires, or makes addition to
the fixtures and equipment existing at the time he took the lease,
is generally permitted to remove them, unless they are so per-
manently annexed to the realty that they cannot be removed with-
out material injury to it or to them; the law finding in such annexa-
tion no intention on the part of the lessee that the articles should
become a part of the realty. But a tenant who removes and dis-
poses of fixtures belonging to the landlord and adapted to the pur-
pose for which the leased premises are used, and substitutes others
of like kind, is presumed, in the absence of any agreement between
the parties, to have intended that the substituted articles should be
permanently attached to the premises, and therefore they cannot
be removed by the tenant as his personal property.

In the present case a lease of a theatre provided that any improvements
or additions made by the lessee should remain the property of the
lessor. With the landlord's consent that he might do so at his own
expense, the lessee removed and disposed of a portion of the electric
lighting apparatus, and substituted in its place other similar equip-
ment which could be removed without material injury to the build-
ing, but not without rendering it practically useless as a theatre.
*Held* that under these circumstances the intention of the lessee to
make a permanent accession to the realty was so clear that the trial
court was justified in ruling as matter of law that the substituted
articles were fixtures and could not be removed. ·

Trade fixtures removable by a lessee must be removed during his pos-
session under the lease, in the absence of facts showing an equitable
right to remove them at a later period.

A lessee, in default in payment of the rent, surrendered possession to

the lessor without removing the alleged trade fixtures. *Held* that the lessee's trustee in bankruptcy, who did not tender the rent due, was not entitled to remove the fixtures so installed; and that the lessor's refusal to deliver them was not evidence of conversion.

The plaintiff claimed that the lease was surrendered by the bankrupt lessee pursuant to a conspiracy between it and the defendant to defraud the lessee's creditors. *Held* that questions tending to show that the defendant's attorney was attorney also for the president of the bankrupt lessee company in actions pending against him, and that the surrendered lease was a valuable asset of the bankrupt corporation, were properly excluded as irrelevant.

Under a general denial of an averment that a lease was surrendered by the lessee, its fraudulent surrender is not in issue, and questions to that end are properly excluded.

The case of *Beers* v. *St. John,* 16 Conn. 322, distinguished.

Submitted on briefs April 8th—decided June 13th, 1913.

ACTION by a trustee in bankruptcy to recover damages for the alleged conversion of an electrical apparatus in an opera house or theatre, brought to the Superior Court in New Haven County and tried to the jury before *Gager, J.;* the jury returned a verdict for the defendant, by direction of the court, and from the judgment thereon the plaintiff appealed. *No error.*

*Clarence W. Bronson,* for the appellant (plaintiff).

*William A. Wright,* for the appellee (defendant).

THAYER, J. The plaintiff, trustee of a bankrupt estate, claiming that certain articles of electrical equipment, which the bankrupt had installed in the defendant's theatre while a lessee thereof, were personal property belonging to the bankrupt estate, demanded the same of the defendant, and, the latter having refused to deliver them, brought this action in the nature of trover to recover damages for their conversion. The court, holding that the articles were fixtures attached to the freehold, directed a verdict for the defendant.

The main question raised by the appeal is whether the verdict was properly directed.

The evidence is not before us. The case has been submitted on briefs upon a finding by the court of the "undisputed facts which were established by the evidence." It appears from the finding that the defendant is a corporation, and the owner of a theatre known as the Grand Opera House in New Haven. On July 24th, 1909, it leased this theatre, with the theatrical scenery and personal property connected therewith, to one Felsburg, trustee, for the term of ten years from June 15th, 1909, at an annual rent of $10,000, payable in instalments of $1,000 each, commencing on the 15th day of September in each year, and continuing monthly thereafter until the full annual rent should be paid. On the 26th of July, 1909, Felsburg assigned the lease to the Grand Opera House Company, a corporation now in bankruptcy, of which the plaintiff is the trustee. At the time the lease was executed and assigned, the theatre was equipped with an electric lighting plant consisting of a switchboard, dimmers, border lights and wires running to all parts of the house, and also six iron boxes set in the floor of the stage, a large amount of wiring concealed under the stage and in the walls and partitions of the building, and a large gridiron over the stage, making a complete lighting plant for the entire theatre, including the stage, lobby, and auditorium, which was essential to the use of the leased premises as and for an opera house and theatre. This equipment constituted one entire plant, and the removal of the switchboard would entirely prevent the use of the lighting apparatus, and the removal of the dimmers would substantially interfere with and render practically useless the lighting plant for the purposes of a theatre.

The Grand Opera House Company had occupied

the theatre for a number of years prior to the execution of the lease, and had considered the above-mentioned electrical equipment adequate and had made no objection thereto. In the fall of 1909 the lessee was requested by Klaw & Erlanger, whose theatrical attractions it was desirous of booking, to make certain additions to the lighting facilities of the theatre stage, and obtained permission from the defendant to make the same at its own expense. No intimation was given the defendant of the extent or cost of the proposed changes. Thereafter the Grand Opera House Company installed a new and larger switchboard and new dimmers, in place of those above mentioned, and iron pipe conduits with wires inclosed therein leading from the switchboard to various points of the theatre, in place of the former wiring, and five sets of border lights with trough containing them and electric cables attached thereto, in place of those previously in use. The old switchboard, dimmers, and wiring were removed and disposed of as junk by the party supplying the new material. The new articles thus installed in place of the old, if removed from the theatre, would have a substantial value of from $1,000 to $1,500. They were supplied upon the order and credit of the Grand Opera House Company, by a contractor who was paid for the same in part and who is now a creditor of the bankrupt estate for the balance. The finding states the manner in which the different articles were attached to the building. Without giving the details, it is enough to say that, while they were all attached to the building, the finding shows that they could be removed "without material injury" to it as a building, but that they "could not be removed, in whole or in part, without rendering said building practically useless as and for a theatre and opera house, for which purpose the building was constructed, equipped and leased."

The lease by its terms was forfeited by the non-payment of any instalment of rent within fifteen days after the same became due. In May, 1910, the Grand Opera House Company was in arrears with its rent to the defendant for more than $5,000, and on demand surrendered to it the possession of the theatre, making no claim of ownership to any portion of the electrical equipment. On July 18th, 1910, the Grand Opera House Company was adjudicated a bankrupt, and on August 11th, 1910, the plaintiff was appointed and qualified as trustee of the bankrupt estate.

As the property in question was capable of being detached and removed from the theatre without material injury to the building, there was nothing in the manner of its annexation which, in itself, would indicate that it had been so attached to the freehold as to preclude the tenant from removing it during its occupancy under the lease. But this is not the only test for determining whether the articles installed by it became fixtures. They were so attached to the building as to make them useful in connection with it, and so that their removal would render it practically useless for the purpose for which it was constructed and used. These facts are important, but not conclusive, as tending to show the intention with which they were attached; and whether they became fixtures or remained personal property is to be determined largely by the intention with which they were attached, as indicated by all the facts in the case. The character of the annexation, the nature and adaptation of the articles annexed to the purposes to which the building is appropriated, the relation of the party making the annexation to the property in question, are all to be considered in determining whether a permanent accession to the freehold was intended. *Capen* v. *Peckham,* 35 Conn. 88, 94. Where these indicate an intention

to permanently attach the articles to the realty, the law declares them to be fixtures which accrue to the owner of the fee.

The law is indulgent to the tenant, as between him and the lessor, in determining what fixtures are removable by him at the termination of the lease. When he leases premises not at the time adapted to the purposes for which both parties understand that they are to be used, and he installs such fixtures thereon as his trade or business requires, or when, during the term of the lease, he makes additions to the fixtures and equipment of the building existing at the time he took the lease, he is generally permitted to remove them unless they are so permanently annexed to the realty that they cannot be removed without material injury to it or to them. The law finds in such annexation no intent on the part of the tenant that the articles shall become a part of the realty. *Capen* v. *Peckham*, 35 Conn. 88, 95. But the case is different when a tenant removes and disposes of fixtures belonging to the landlord, and adapted to the purposes for which the leased premises were used, and substitutes others of a similar character and adapted to the same uses in their place. In the absence of any agreement between the parties, the tenant is presumed, in such a case, to have intended that the substituted articles should be permanently attached to the premises. *Ashby* v. *Ashby*, 59 N. J. Eq. 536, 544, 46 Atl. 528; *Squire & Co.* v. *Portland*, 106 Me. 234, 240, 76 Atl. 679; *Bovet* v. *Holzgraft*, 5 Tex. Civ. App. 141, 23 S. W. 1014; *Feltcher* v. *McMillan*, 103 Mich. 492, 499, 61 N. W. 791. In such case they become an accession to the freehold as soon as annexed, and cannot be thereafter removed by the tenant as personal property.

The established facts showed that the articles in question in this case were substituted for similar

articles which were in the theatre when the bankrupt leased it, and which were adapted to the purposes for which it was constructed and used. The ones removed were not retained by the bankrupt to be restored at the termination of the lease, but were disposed of so that such restoration was impossible. The substitution was made, with the assent of the landlord that it might be done at the lessee's expense, under a lease which provided that any improvements or additions made by the lessee should be and remain the property of the lessor. Upon these facts the intention on the part of the bankrupt that the substituted articles should become an accession to the realty, is so clear that the court would say as matter of law that they were fixtures and there was no question to be submitted to the jury.

The plaintiff claims that in this State it has been determined that articles thus substituted by a tenant for others essential to the use of the premises are not necessarily accessions to the freehold, and cites *Beers* v. *St. John*, 16 Conn. 322, in support of his contention. An examination of that case shows that the point in controversy there was whether the building in question in that case was a new one or a repair of an old one, and that there was no claim, if it was a new one erected by the tenant for the purposes of his trade, that he could not remove it at the termination of his lease. The plaintiff's title to the building was made to depend (as the opinion at page 329 states) entirely upon the question whether the use of a portion of the materials of an old shop in the erection of the new one, vested the title of the latter in the proprietor of the former, who was the lessor. The jury having found, under instructions which were not complained of, that the building was a new one, and no claim having been made that, if so, the tenant might not lawfully remove it during his term, the motion for a new trial was denied,

The case, therefore, furnishes no support to the plaintiff's contention in the present case. The court correctly held that the substituted electrical equipment in the present case was a fixture, and not removable by the tenant.

But if, as claimed by the plaintiff, they were trade fixtures, and so removable by the bankrupt, it was bound to remove them during its possession under the lease, in the absence of facts showing an equitable right to remove them at a later period. After the lease was terminated, the term surrendered, and the defendant in possession of the theatre, the bankrupt or his vendee · or trustee could not enter and remove them. *Morey* v. *Hoyt*, 62 Conn. 542, 546, 26 Atl. 127. The term was surrendered in May. There were then due five instalments of rent, amounting to $5,000. The plaintiff, in August, after his appointment as trustee, without, so far as appears, tendering the rent which was due, demanded the fixtures as personal property belonging to the bankrupt estate. The property, if a trade fixture when installed, had then become an accession to the realty, and the defendant, upon the facts, was under no legal obligation to deliver it to the plaintiff. Its refusal to do so was not evidence of a conversion.

The complaint alleges a conversion of personal property, describing it. The answer, as a second defense, sets up the lease of the theatre, that it was equipped with a suitable lighting apparatus (describing it), that the bankrupt corporation removed this and substituted the articles in question, and that it later surrendered the lease. The plaintiff in reply, among other things, denied these allegations. Upon cross-examination of one Felsburg he was asked certain questions, by which the plaintiff claimed to prove that the surrender of the lease was made pursuant to a conspiracy between the bankrupt and the defendant

to defraud the former's creditors out of the lease, which, the plaintiff claimed, was a valuable asset. The fact, if established, that the attorney for the defendant in the present case was attorney for the witness Felsburg in an action by the plaintiff against him upon a contract to pay an indebtedness of the bankrupt corporation, and also in another action by the plaintiff, in which Felsburg was codefendant with the defendant and its principal stockholder, for conspiracy, would lay no foundation for an inference that there was such a conspiracy, as claimed, and the questions tending to show that the defendant's attorney was Felsburg's attorney in those actions were properly excluded.

For the same reason, the questions seeking to show that the surrendered lease was a valuable asset of the bankrupt company were properly excluded. They were properly excluded also upon the ground that the plaintiff had not in his pleadings laid a foundation for them by setting up the fact that the surrender was fraudulent. His reply was a denial that the term had been surrendered. To avail himself of the fact, if it were a fact, that the surrender was fraudulent and void, he should have given notice of that claim in his reply to the answer setting up the surrender of the lease.

There is no error.

In this opinion the other judges concurred.