The Oakland Beach Fire District vs. James McDonnell, et als. } Eq. No. 615.

The Oakland Beach Volunteer Fire Company vs. The Oakland Beach Fire District } Eq. No. 617.

November 14, 1933.

CHURCHILL, J. Heard on bills, answers and proofs.

The above cases were heard together.

The Oakland Beach Volunteer Fire Company (hereinafter called the Volunteer Company) was incorporated November 11, 1913, under the provisions of Chapter 212, General Laws

1909, for the purpose of extinguishing fires and the protection of life and property. It acquired property, both real and personal, including a fire station located in the village of Oakland Beach in the City of Warwick, and maintained an active existence for the purposes for which it was organized down to the time of the hearing of these causes.

The Oakland Beach Fire District (hereinafter called the Fire District) was created by a special act of the Legislature, Chap. 1604, Public Laws 1917. The district as laid out in the act embraced a territory about one mile square including the greater part of the village of Oakland Beach.

The act creating the district is much too long to even summarize but it is sufficient to characterize it as containing the provisions common to such acts creating special taxing districts. Among the provisions, Sec. 9 provides that "the * * * district * * * shall have the power to appoint so many men as they think needful to be formed into a hose company or companies, and also hook and ladder company, and to make all such law and laws for organizing and establishing the same as they see fit * * *."

After the creation and organization of the Fire District, the Volunteer Company continued to function without interruption as before. October 20, 1918, the Volunteer Company transferred to the Fire District by deed all its real estate, which embraced the fire station and all the fire apparatus and equipment, furnishings and fixtures at the fire station. The Volunteer Company continued in operation, however, as a fire fighting organization, using the equipment transferred to the Fire District, and from time to time purchased other apparatus and equipment, chiefly from funds coming from the Town of Warwick. The record shows that beginning with 1921, the Volunteer Company received as its share of the appropriation devoted to the use of the several volunteer companies in the Town of Warwick sums ranging from $1,700 to $3,000 a year and the record also shows that the City of Warwick has appropriated and allocated to the use of the Volunteer Company the sum of $3,000 for the year 1933. During the period from 1917 to July 15, 1933, the Volunteer Company continued to occupy the fire station without objection.

The Fire District purchased a LaFrance truck which was manned by the Volunteer Company and the Volunteer Company purchased a Ford Maxim truck, also operated by members of the Volunteer Company.

On August 17, 1933, the Fire District took steps under Section 9 of the act of 1917 to organize a fire company for the Oakland Beach Fire District and appointed the members of such company.

August 19, 1933, the Volunteer Company vacated the fire station, removed a part of its apparatus and sued out a write of replevin for numerous pieces of personal property and equipment in the fire station. Thereupon the Fire District, claiming all the equipment and apparatus on the premises of the fire station, filed a bill in equity against the Volunteer Company to restrain the prosecution of the replevin suit and for a decree to establish title in the fire equipment and apparatus on the premises of the fire station; to enjoin the respondents from maintaining another fire department and to compel the city treasurer of the city of Warwick to pay the amount of $3,000, theretofore appropriated, to the Fire District.

Next, the Volunteer Company filed its bill to restrain the Fire District from interfering with its possession and control of the fire apparatus or appliances, to establish its own title thereto; by decree to vest control of all the fire fighting apparatus located on the premises of the fire station in its own hands, and for a mandatory

decree against the city treasurer of the City of Warwick to compel him to pay the amount of the appropriation to the Volunteer Company.

### (1)

### Repeal of the Charter of the Volunteer Company.

The Fire District argues that the legislative act of 1917 creating the Fire District, taken together with the proceedings of the Fire District in August, 1933, worked a repeal of the Charter of the Volunteer Company, or at least stripped it of all its functions, and further argues that the property of the Volunteer Company being property devoted to a public use and having been purchased from the proceeds of appropriations made by the Town of Warwick, title to such property is now vested in the Fire District.

It may be assumed that both bodies are fulfilling public functions and that the property which is in dispute is devoted to the public use and benefit, yet the consequences which the Fire District seeks to draw do not follow.

Sec. 11 of Chap. 212, Public Laws 1909, under which the Volunteer Company was organized, specifically embraces engine companies as one of the general class of companies embraced in the provisions of the act. Under Sec. 13 of the act any corporation organized thereunder was entitled to take, hold, transmit and convey real and personal estate to an amount not exceeding $100,000.

At the time of the passing of the act of 1917, the Volunteer Company possessed property, both real and personal, and has continued to hold property down to the present time.

There is no reference to the Volunteer Company in the act of 1917 creating the Fire District, nor is any specific authority given to the Fire District to take over the property of the Volunteer Company, nor for the transfer of the functions of the Volunteer Company to the Fire District, nor does the act provide for such transfer whenever the Fire District shall so elect to take.

There being no specific provision in the act of 1917 providing for repeal, abrogation of the charter or transfer of the property or functions of the Volunteer Company to the Fire District, it follows that such claimed consequences must arise by implication. Repeal by implication arises when the repugnancy between two enactments is total and undeniable. In the case at bar no such repugnancy exists. Furthermore, there are no provisions in the act which would warrant this Court in ruling that the act of 1917 authorized or contemplated the involuntary transfer of the property of the Volunteer Company to the Fire District.

### (2)

### Control over Appropriations.

The Fire District seeks a mandatory injunction against Howard V. Allen. city treasurer of Warwick, to compel him to pay the appropriation of $3,000 to the Fire District and to enjoin him from paying that amount to the Volunteer Company.

The Volunteer Company seeks to restrain Allen from paying the amount of the appropriation to the Fire District.

No matter of private right is involved but the question is one wholly in the power and jurisdiction of the City of Warwick. A Court of equity where no matter of private right is involved has no jurisdiction over the action of municipal legislative bodies.

Morrissey vs. Shenango Furnace Co., 280 Fed. 798;

4 Pomeroy's Equity, 4th ed., Sec. 1762-1765.

Neither party is entitled to a decree in this respect, it being a matter over which this Court sitting in equity has no jurisdiction.

### (3)
### *Control over Operation.*

The Fire District seeks to control the operation of all fire fighting companies, apparatus and facilities within the Oakland Beach fire district, and argues strenuously that the language of the act of 1917 gives it such right of control and that the public safety will be endangered if another company is suffered to act independently in the district.

Whatever the strength of the argument may be, the Court in the case before it cannot by its decree control an administrative matter of this character. Whatever remedy exists, it must be sought in some organ of power other than a court of equity.

See authorities under (2).

Neither party is entitled to a decree in respect to control over the operations of the other, owing to lack of jurisdiction in this court over the questions involved in this aspect of the case.

### (4)
### *Title to Siren.*

The Fire District claims title to a siren on the fire station as an irremovable fixture. The title to the fire station was transferred from the Volunteer Company to the Fire District in 1918. The Volunteer Company at some time thereafter requested the Fire District to place a siren on the station but without result, and in April of 1927 a committee was appointed by the Volunteer Company to obtain funds for the purchase of such an appliance. Subscription lists were circulated throughout the vicinity of Oakland Beach, not only within the Fire District area but in neighboring localities. Subscriptions to the fund were made by persons in the Fire District who were voters therein, by members of the Volunteer Company and by persons who were not members of either body but who lived in the vicinity. The fund thus secured amounted to $850 and was placed in a special deposit by the Volunteer Company. In April of 1927 the Volunteer Company requested permission of the Board of Trustees of the Fire District to place the siren in the building. This request was granted by John L. Doyle, purporting to act for the Board of Trustees. The total cost of installation was $876.21, exclusive of the cupola, and this cost was paid by the Volunteer Company from the fund raised by subscription and the balance from their own moneys. Shortly after the siren was placed in the building, a cupola was erected for the purpose of protecting it. There is evidence that the Fire District paid a total amount of about $200 over the years 1927, 1928 and 1929 for various items of expense incurred for labor and material in connection with the siren or the cupola.

The siren was installed late in 1927. At the time of installation the building was jointly occupied by the Fire District and the Volunteer Company; the apparatus and equipment owned by each being housed in the building. The Volunteer Company had no lease and paid no rent but occupied the building or parts thereof with the consent of the Fire District.

A crude system of giving an alarm of fire and of calling members of the fire department to duty had been in vogue previous to the installation of the siren which was installed to give more efficient notice to the members of the Volunteer Company, none of whom were men permanently on duty at the station.

The siren, an apparatus weighing 400 to 500 pounds, was bolted to a platform which, in turn, was bolted to the roof timbers of the station. When the cupola was constructed, a transverse section of the roof was cut out and the cupola was erected in the section thus made. A set of wires ran from the siren under the roof down to the side wall between the floor of the second floor and the ceiling of the first

floor and thence to an instrument board or panel. If the cupola and siren were both removed substantial damage would be done to the building. If the siren were removed, it would be necessary to cut the wires and bolt holes would be left open.

Under the facts in relation to the occupation of the fire station by the Volunteer Company and giving the facts a construction favorable to the Volunteer Company, it would seem that the Volunteer Company was a tenant at will.

*Johnson* vs. *Johnson*, 13 R. I. 467.

*Canning* vs. *Owen*, 22 R. I. 624, involving a question of fixtures, was a case between a mortgagor and a mortgagee and the rule laid down in that case was the rule obtaining as between vendor and vendee.

*Canning* vs. *Owen* was decided in 1901 and the tendency of modern decisions since that time has been to assimilate the rule in regard to fixtures as between landlord and tenant to the rule laid down in *Canning* vs. *Owen*, that everything is regarded as a fixture which has been attached to the realty with a view to enhancing the value thereof and for the purpose of being permanently used in connection therewith.

The modern rule as applied to landlord and tenant is stated, in the case of *Webb* vs. *New Haven Theatre Co.*, 87 Conn. 129:

"The character of the annexation, the nature and adaptation of the articles annexed to the purposes to which the building is appropriated, the relation of the party making the annexation to the property in question, are all to be considered in determining whether a permanent accession to the freehold was intended.

"The law is indulgent to the tenant as between him and the landlord in determining what fixtures are removable by him at the termination of the lease."

See also

*Blake-McFall* vs. *Wilson*, 98 Or. 626; 14 A. L. R. 1275;

*Holmes* vs. *Standard Publishing Co.*, 55 Atl. 1107 (N. J. Eq.) ;

11 R. C. L., p. 1063, Sec. 6; p. 1069, Sec. 13;

*Ewell, Fixtures*, 2nd ed., pp. 27-31, *p. 22.

The Volunteer Company was a tenant at will of the Fire District. It is clear that the siren was placed on the building to enhance the value of the building for the purposes for which it was built; that it was placed on the building not for the exclusive benefit of the Volunteer Company but for the benefit of the whole surrounding community which the fire station served; and that its removal would lessen the value of the building as a fire station.

Taking these factors into consideration, together with the manner in which the siren was annexed to the building, the Court finds that the siren was annexed to the building with the intent to make it a permanent part of the structure to which it was annexed, and further finds that the siren is an irremovable fixture and a part of the fire station and that title thereto is in the Fire District.

### (5)

#### Title to Hose Rack.

During the time the Volunteer Company was in occupation, it constructed on the first floor of the fire station a wooden rack or frame for the purpose of drying hose. This rack was supported by posts bolted to the north wall of the building and running through the line of the partition which was cut away for the purpose.

Without an extended discussion and applying the rule as to fixtures followed in (4) above, and taking into consideration the relationship between the parties, the method by which the structure was annexed to the building and the fact that it was appropriate

for the uses for which the building was erected, the Court finds that the intent of the Volunteer Company was to permanently annex the hose rack to the fire station and hence it is an irremovable fixture and title thereto is in the Fire District.

### (6)
### Title to Trucks.

Two hose trucks have been used by the Volunteer Company; one, a La-France truck which the Volunteer Company admits is the property of the Fire District and which passed under the deed of 1918, and the other a Ford Maxim truck which was purchased by the Volunteer Company subsequent to the deed of 1918. Purchase notes on this truck are still outstanding executed by the Volunteer Company.

The Fire District contends that as it is undisputed that the Ford Maxim truck was purchased from funds which had their source in moneys which came from the Town of Warwick under appropriations by that town, the title has passed to the Fire District. This point has already been passed upon under (1) herein and the reasons which led the Court to reject the claim need not be repeated. The Court finds that title to the LaFrance truck is in the Fire District and title to the Ford Maxim truck is in the Volunteer Company.

### (7)
### Title to Miscellaneous Appliances and Equipment.

The title to various appliances and articles of equipment at the fire station is in dispute.

(A) Hats, coats and boots.

The evidence shows that these articles at the fire station were purchased by the Volunteer Company and the Court finds that the title is in that company, with the exception of the hat, coat and boots used by the fireman who is permanently on duty at the fire station.

(B) Hose and Baker Nozzles.

In 1918, when the La France truck was sold to the Fire District, there was used in connection with the truck 1200 feet of hose. This specific hose is the property of the Fire District. The evidence further shows that in 1924 and 1925 the Fire District purchased 1000 feet of hose, title to which still remains in it. Title to all the other hose is in the Volunteer Company. The two Baker nozzles were purchased on December 11, 1930, by the Volunteer Company and title is in that company.

(C) Miscellaneous Equipment.

All the other articles set forth in the writ of replevin (Respondent's Exhibit D) are the property of the Volunteer Company under proof of purchase or waiver of proof of ownership by the Fire District; except two Alemite grease guns, one gavel, one ballot box, one branding iron, two axes, one wall clock and a 15-foot roof ladder. There is not sufficient evidence before the Court in respect to these items to enable the Court to make any decision in relation thereto. The parties may present proof as to these articles at the hearing on entry of final decree.

A decree may be entered in accordance with the findings of fact and rulings of law in this rescript.

For Oakland Beach Fire District: Mortimer G. Cummings.

For Oakland Beach Volunteer Fire Co. and Other Parties: Voigt, Wright & Munroe and Hugo A. Clason.