**HARTFORD NATIONAL BANK & TRUST CO.**

v.

**Caro M. HARVEY and Errol G. Littlefield.**

Supreme Judicial Court of Maine.

Argued Jan. 4, 1980.

Decided Oct. 1, 1980.

---

Matthew S. Goldfarb (orally), Portland, for plaintiff.

Pine Tree Legal Assistance, Inc., E. James Skillings (orally), John Whitehouse Cobb, Bangor, for defendants.

Before WERNICK, GODFREY and GLASSMAN, JJ., and DUFRESNE, A. R. J.

WERNICK, Justice.

Plaintiff Hartford National Bank & Trust Co. (Hartford National) has appealed from a Superior Court (Waldo County) judgment which vacated a judgment entered in an action of forcible entry and detainer brought in the District Court (District Five, Division of Waldo). The judgment of the District Court adjudicated that plaintiff was entitled to the possession of a mobile home unit.

Vacating that judgment, the Superior Court's judgment directed dismissal of the action on the ground that the District Court lacked subject–matter jurisdiction. The Superior Court's rationale was that 14 M.R. S.A. § 6012, authorizing the action of forcible entry and detainer to lie for the recovery of possession of personal property, did not authorize the instant action because the mobile home unit that was the subject–matter of the action was shown to have been used as a dwelling and this fact alone, as a matter of law, caused it to lose its character as personal property.

We conclude that: (1) the fact that a mobile home unit is used as a dwelling fails by itself to establish as a matter of law that it has been transformed into other than personal property; (2) here, the issue whether the property involved was personalty or non–personalty had never been raised in the proceedings in the District Court, and it was neither raised nor addressed in the Superior Court until the Superior Court justice, acting sua sponte, mentioned it in his opinion as an issue that he would decide as a matter of law; (3) even though the Superior Court justice erred in treating the issue as capable of being decided as a matter of law, he acted correctly in bringing the issue forward as an issue to be addressed and decided, since a decision of it in one alternative could be dispositive.

We therefore vacate the judgment of the Superior Court and remand the case to the Superior Court with instructions that the Superior Court remand the case to the District Court with directions that it: (1) address and decide the issue whether the mobile home unit had remained, or been transformed into other than, personal property; and (2) make such decision only after affording the parties opportunity to present additional evidence relevant to the issue.

In June 1973, defendants purchased a new mobile home unit from F & R Mobile Homes, Inc., situated in Brewer. The terms of the sale were contained in a retail sale installment contract. The contract provided that F & R Mobile Homes, Inc., had a security interest in the mobile home unit. F & R Mobile Homes, Inc., assigned the contract to plaintiff Hartford National.[1] The contract also provided that the mobile home unit was to remain at all times "personal property"; that the secured party or assignee had rights to repossess it upon default by the buyers; and that the buyers would not perform any act that would cause the mobile home unit to lose its mobility or character as a vehicle or cause it to become affixed to realty so as to become a part thereof.

Defendants took possession of the mobile home unit one month after purchase, and since that time they have used it as their principal residence. Defendants had moved the mobile home from an initial location to a second lot. The transcript of the District Court proceedings contains no evidence regarding the extent to which the mobile home had been attached, or affixed, to the parcels of land on which it had been placed.

By October 1978, defendants were delinquent in their payments in the amount of

---

1. Although a copy of the "Retail Installment Contract" was appended to the amended complaint, thus reflecting the existence of the assignment by F & R Mobile Homes, Inc., to Hartford National, the complaint does not expressly allege this assignment and the evidence does not substantiate it. Since we must remand this case in any event, the complaint should be amended to contain an express allegation of the assignment, and evidence should be presented to show that there was an assignment.

$610.49. On several occasions, an agent of plaintiff visited defendants attempting to collect the delinquency. On October 3, 1978, plaintiff sent to each defendant a "Notice of Right to Cure Default", which informed the defendants that they were delinquent in payments in the amount of $610.49; that they were being given notice of their default in accordance with Section 5.110 of the Maine Consumer Credit Code; that they had 21 days to cure the default; and that a failure to pay the amount due within the stated time may cause plaintiff to "exercise ... [its] rights under law."

Apparently no payment was forthcoming, and plaintiff brought this action of forcible entry and detainer, under 14 M.R.S.A. § 6012,[2] to gain possession of the mobile home unit. Plaintiff's complaint had appended to it only the first page of the two page retail installment contract.[3] The complaint alleged that defendants had defaulted by not making payments due under the contract; that defendants had been issued and failed to respond within the stated time to the "Notice of Right to Cure Default"; and that plaintiff was entitled to possession of the mobile home unit.

On February 6, 1979, defendants filed a motion to dismiss, as well as an answer in which they asserted two "Affirmative Defenses."

The first of the affirmative defenses was that (1) the contract assigned to plaintiff violated disclosure requirements of the federal Consumer Credit Protection Act, 15 U.S.C. § 1601 *et seq.* and Regulations promulgated thereunder; (2) hence, plaintiff was liable to defendants for a statutory penalty in an amount sufficient to offset the amount defendants were in default; and (3) therefore, plaintiff's right to possession was negatived.

The second affirmative defense was that this action is barred by 9–A M.R.S.A. § 5.104,[4] a provision in the Maine Consumer Credit Code (9–A M.R.S.A. §§ 1.101–7.127) (Supp.1979–80).

2. The full text of 14 M.R.S.A. § 6012 (1980) is:
"If a dispute shall occur between 2 or more parties, any of whom claim to be owners as to their respective rights in, title to or possession of personal property, any claimant may bring an action in District Court wherein said claimant must serve the defendant with a copy in his complaint of the security instrument or instruments, bill of sale or other evidence of title and thereafter produce the best available evidence in court whereby he claims said interest in said personal property and thereupon the defendant shall be required to show cause why possession of said property should not be delivered over immediately to the claimant.
"Said court is given equitable powers to make all appropriate orders, including but not limited to, turnover orders in relation to said property and the parties to said action to compel obedience to its judgment and orders.
"Either party may have 5 days in which to appeal the judgment of said District Court, provided the appellant shall be required to give a sufficient surety or sureties to adequately protect the interests of the appellee during said appeal.
"Civil rules of procedure as now exist or may hereafter be amended in cases of forcible entry and detainer shall apply in said actions insofar as same shall be applicable.
"The remedy provided in this section shall be deemed a remedy in equity and shall be in addition to and not in lieu of other remedies now existing by law, and there shall be no right of removal, except if defendant shall claim title to said property in himself, he shall provide claimant with a sufficient surety or sureties to pay all intervening damages and costs and a reasonable rental for use of said personal property. The plaintiff shall in like manner provide surety or sureties to the defendant conditioned to enter the action in Superior Court within 30 days and to pay all costs adjudged against him. If either party neglects to so provide said surety or sureties, judgment shall be rendered against him.
"The plaintiff may make a written allegation that the defendant's claim of title is frivolous and intended for delay and the judge shall then examine the case so far as to ascertain the truth of the allegation and if satisfied of the truth thereof, he shall proceed to try the cause, but this shall not prevent an appeal as provided in this section."

3. The second page of the contract set out the rights of the creditor upon debtor's default.

4. 9–A M.R.S.A. § 5.104 (Supp.1979–80):
"Prior to entry of judgment in an action against the consumer for debt arising from a consumer credit transaction, the creditor may not obtain an interest in any property of the debtor by attachment, garnishment or like proceedings."

Defendant's motion to dismiss asserted that the District Court lacked jurisdiction under Section 6012 because plaintiff had failed to attach a complete copy of the security agreement to the complaint, in violation of the specific requirement in Section 6012 that a

> "claimant must serve the defendant with a copy in his complaint of the security instrument or instruments, . . . ."

The District Court denied defendants' motion to dismiss and, after a hearing on the merits, decided that plaintiff was entitled to possession of the mobile home unit at issue.

· Defendants appealed to the Superior Court from the judgment so adjudicating, raising for Superior Court decision the three legal issues raised by its affirmative defenses and its motion to dismiss, as above explained. After oral argument and submission of briefs, the Superior Court sustained the appeal, and ordered a remand to the District Court for dismissal of the action. The Superior Court decided none of the issues raised by either party at any level of the action but, as already explained, concluded that a mobile home when it is in fact used as a permanent place of residence is as a matter of law "something more than mere personal property–it is a dwelling." Holding for this reason that Section 6012, which goes only to personality, was not applicable, the Superior Court directed the District Court to dismiss the action.

## 1.

■ We reject the Superior Court's conclusion that a mobile home when used as a dwelling is, regardless of any other circumstances, as a matter of law "something more than mere personal property."

In common parlance the designation "mobile home" connotes a structural unit that, at least as it comes into being, is a moveable or transportable unit. Although there can be circumstances in which a mobile home unit, like any personal property, may become so related to land on which it rests as to become a part of the land, it is erroneous to conclude that merely because a mobile home unit is lived in as a dwelling, that fact alone makes the mobile home unit non–personalty for the purposes of Section 6012. See B. Hodes and G. Roberson, The Law of Mobile Homes 13 (1957) ("In the absence of special circumstances involving affixation of the mobile home to the land, which would give rise to legitimate debate concerning its status as realty or personalty, it seems clear that a mobile home is personalty and not realty.") Cf. Inhabitants of Town of Farmington v. Hardy's Trailer Sales, Inc., Me., 410 A.2d 221 (1980). (Mobile homes held as stock in trade were taxed as personalty).

The appropriate determination of whether a mobile home remains personal property or has become "something more" than personal property is essentially the determination whether the mobile home, by virtue of its physical relationship to land on which it is placed and the intention of the parties, has become a fixture. See Clevenger v. Peterson Construction Co., 14 Wash.App. 424, 542 P.2d 470 (1975); In re Boatman, Inc., 504 F.2d 924 (5th Cir. 1974); United States v. Shelby County, Tennessee, 385 F.Supp. 1187 (W.D.Tenn.1974).

Defendants suggest that several statutes that address a variety of aspects relating to mobile homes confirm the correctness of the Superior Court's position. Yet, even if the legislature may have seen fit to characterize mobile homes as realty in a particular context, i. e., taxation,[5] or to extend addi-

---

5. 36 M.R.S.A. § 551 (1978):
"Real estate, for the purposes of taxation, shall include all lands in the State and all buildings, mobile homes and other things affixed to the same, such as, but not limited to, camp trailers, together with the water power, shore privileges and rights, forests and mineral deposits appertaining thereto; interest and improvements in land, the fee of which is in the State; interests by contract or otherwise in real estate exempt from taxation; and lines of electric light and power companies. Buildings, mobile homes and other things affixed to the land, on leased land or on land not owned by the owner of the buildings, shall be considered real estate for purposes of taxation and shall be taxed in the place where said land is located. Mobile

tional protections to mobile home occupants in other contexts on the basis that the vehicle is used as a dwelling place,[6] those particular provisions are not determinative as to the present issue whether, for purposes of Section 6012, a mobile home used as a dwelling must be deemed, as a matter of law, "non–personalty."

The legislature has employed a general definition of "mobile home" in a variety of contexts. This definition is neutral with respect to the characterization of the vehicle as either real or personal property. *See* 10 M.R.S.A. § 9002(10) (Supp. 1979–80) (defining "mobile home" for purposes of general housing provisions); 30 M.R.S.A. § 4061–A (1978) (defining "mobile home" for purposes of regulation of "mobile home parks"); 30 M.R.S.A. § 4773(8) (1978) (defining "mobile home" for zoning purposes); 36 M.R.S.A. § 1481(1)(A) (1978) (defining "mobile home" for taxation purposes). All of the foregoing Sections define a mobile home as a structure which is

"transportable in one or more sections, which is 8 body feet or more in width and is 32 body feet or more in length, and which is built on a permanent chassis and designed to be used as a dwelling, with or without a permanent foundation when connected to the required utilities, and includes the plumbing, heating, air–conditioning or electrical systems contained therein."

Absent, therefore, a specific legislative directive classifying mobile homes as realty generally, or as realty for the specific purposes of a forcible entry and detainer action, we cannot say that existing legislation requires the position taken by the Superior Court in this case.

Since, then, for the purposes of Section 6012 as applicable to the present case, the character of a mobile home unit as being personalty or non–personalty will depend upon whether or not it has become sufficiently affixed to land, we turn to the legal

standard by which to make that determination.

*Boothbay Harbor Condominiums, Inc. v. Department of Transportation,* Me., 382 A.2d 848, 854 (1978) restated well established legal criteria set out in *Bangor–Hydro Electric Co. v. Johnson,* Me., 226 A.2d 371, 378 (1967) for determining whether personalty has become part of the realty on which it rests. Those criteria inquire whether

"(1) it is physically annexed, at least by juxtaposition, to the realty or some appurtenance thereof, (2) it is adapted to the use to which the land to which it is annexed is put, or the chattel and the real estate are united in the prosecution of a common enterprise, and (3) it was so annexed with the intention on the part of the person making the annexation to make it a permanent accession to the realty, . . . ."

Of these three criteria, particular emphasis is placed on the third. *See Boothbay Harbor Condominiums, Inc. v. Department of Transportation, supra,* at 854; *Bangor–Hydro Electric Co. v. Johnson, supra,* at 378; *Wedge v. Butler,* 136 Me. 189, 190, 6 A.2d 46 (1939). In focusing upon this third element, we have further explained that

"it is not the unrevealed, secret intention that controls; it is the intention indicated by the proven facts and circumstances, including the relation, the conduct and language of the parties; the intention that should be inferred from all these." *Hayford v. Wentworth,* 97 Me. 347, 350, 54 A. 940, 941 (1903).

■ In light of the applicable criteria of decision we must conclude that the present record contains inadequate information to permit a decision on the issue introduced, sua sponte, by the Superior Court. The transcript of the proceedings before the District Court contains no testimony about the nature of the mobile home's physical

---

homes, except stock in trade, shall be considered real estate for purposes of taxation."

6. *See* 14 M.R.S.A. § 4551 (1980) ("Homestead exemption" from attachment applied to mobile

homes up to $6500 in value); 30 M.R.S.A. § 4066–B(8) (120 days' written notice of termination of tenancy required to be given by mobile home park operator).

attachment to the land i. e., whether utilities were connected, whether a foundation was built and the vehicle placed thereon, whether the wheels were still in place, and so forth. All that appears is that the mobile home had been moved once from its initial location to a new location, thus suggesting there may not have been an intended permanent affixation to the realty.

Plaintiff argues that the issue of the parties' intention is conclusively settled by the language in the contract stating that the

> "Mobile Home shall at all times remain personal property. ... [Buyers agree] not to perform, or allow the performance of, any act which causes the Mobile Home to lose its mobility or character as a vehicle or any act which results in the Mobile Home becoming affixed to realty so as to become a part thereof."

We reject this argument. The contract may establish the original intention of both parties, but it does not necessarily establish whether or not, in breach of the contract, the defendants may have subsequently affixed the mobile home to land with intention to make it a permanent accession to the land. Whether defendants subsequently so acted remains a question of fact to be decided on the basis of all the relevant circumstances. *See Bangor–Hydro Electric Co. v. Johnson, supra; Hayford v. Wentworth, supra.*

Thus, the present record fails to supply an adequate factual basis for the determination of the issue raised, sua sponte, by the Superior Court justice, and which, once thus raised, should be decided because the decision of it could be dispositive of the case. We therefore remand the case to the Superior Court with instructions that it enter judgment remanding to the District Court and directing the District Court to decide the personalty/non–personalty question after the parties have been given opportunity to present, as they may see fit, additional evidence relevant to the issue.

2.

In the event that, on remand, the District Court should decide that the mobile home

unit remained personalty, so that the action under Section 6012 need not be dismissed, several other issues raised by defendants will then be in order for decision. To cover that contingency, and in the interest of judicial economy, we now address these other issues.

■ Defendants assert in one of the two "affirmative defenses" they have raised that the contract under which plaintiff claimed a right to repossess the mobile home was in violation of federal disclosure requirements found in the Consumer Credit Protection Act, 15 U.S.C. § 1601 *et seq.* and Regulations promulgated thereunder. Hence, defendants contend, plaintiff was liable to defendants for a statutory penalty large enough to offset entirely the default alleged in plaintiff's complaint and therefore effectively to defeat plaintiff's right to repossess.

From the District Court's judgment and subsequent findings of facts, we are unable to determine whether the court rejected this contention on the merits or merely failed to consider it. Accordingly, for present purposes, we clarify what is legally involved when this defense is raised· in the context of an action under Section 6012.

Confusion about the scope of the proceedings under Section 6012 arises in part because that statute has made Rule 80D(g) M.Dist.Ct.Civ.R. applicable to forcible entry and detainer actions against personalty. Rule 80D(g) states:

> "Forcible entry and detainer actions shall not be joined with any other action, *nor shall a defendant in such action file any counterclaim.*" (emphasis added)

Thus, it may appear at first glance that defendants' affirmative defense may be foreclosed because defendants' assertion of liability for statutory penalties looks like a "counterclaim." *See Union Trust Company of Ellsworth v. Hardy*, Me., 400 A.2d 384, 385, n. 1 (1979). Two factors, however, tend to show that the defense, as raised here, is not *automatically* outside the scope of a Section 6012 action. First, it is plain from defendants' answer that the assertion

of liability is *only defensively* asserted, to negative plaintiff's possessory rights through the default; hence, the asserted defenses cannot be considered "counterclaims" as such. *Union Trust Company of Ellsworth v. Hardy, supra,* at 385–86, n. 1. Second, Section 6012 expressly confers upon the District Court "equitable powers to make all appropriate orders, . . . ." Accordingly, even though the action of forcible entry and detainer against realty has been traditionally viewed as a highly summary proceeding, *see Eveleth v. Gill,* 97 Me. 315, 54 A. 756 (1903), and even though the Section 6012 action as to personalty is closely modeled after, and based upon, the conceptual framework of the forcible entry and detainer action pertaining to realty, *see Colonial Builders and Investors, Inc. v. Meier,* Me., 417 A.2d 422 (1980), there is nevertheless the critical difference that the court adjudicating an action brought pursuant to Section 6012 must consider all the equities. *See Cooper v. Fidelity Trust Company,* 132 Me. 260, 170 A. 726 (1934); *Crummett v. Littlefield,* 98 Me. 317, 56 A. 1053 (1903).

■ Regarding the second affirmative defense raised by defendants, namely that Section 5.104 of the Maine Consumer Credit Code bars this action under Section 6012, the District Court stated in its "Finding of Facts" that "the Maine Uniform Commercial Code . . . [applied] and the Consumer's Credit Code did not." We take this statement to mean that the District Court rejected defendants' argument on this point. We agree with the District Court.

Defendants argue that, fairly read, Section 5.104 abolishes *all* actions brought to obtain property unless the debtor is allowed a full hearing on the merits of the underlying debt. This is the effect, say defendants, of the words "like proceedings" appearing in Section 5.104 in conjunction with the words "attachment" and "garnishment."

We think defendants' interpretation misreads the language of Section 5.104 and misconstrues its function in the overall statutory scheme. Section 5.104 states:

"*Prior to entry of judgment* in an action against the consumer *for debt* arising from a consumer credit transaction, the creditor may not obtain an interest in any property of the debtor *by attachment, garnishment* or like proceedings." 9–A M.R.S.A. § 5.104 (Supp.1979–80) (emphasis added).

Plainly, Section 5.104 is addressing a particular type of judicial proceeding. Where a creditor brings an action "for debt" (arising from a "consumer credit transaction"), such creditor may not resort to those procedures that resemble "attachment" or "garnishment", namely, procedures that are *ancillary* to an underlying action to recover the debt and that enable the creditor to obtain an interest in any of the debtor's property as security prior to judgment in that underlying action. In the instant case a creditor with an existing security interest in particular property seeks a judgment under Section 6012 that the creditor is *entitled* to possess the collateral *before* actually repossessing. This proceeding is therefore not one that is ancillary to an underlying action to recover the debt. Absent a more direct and particular manifestation of intendment by the legislature, we cannot accept defendants' reading of Section 5.104.

The interpretation we give Section 5.104 is supported by several factors.

First, the parallel provision in the Uniform Consumer Credit Code, which was the model for Maine's Consumer Credit Code, provides as follows:

"Before entry of judgment in an action against a consumer for debt arising from a consumer credit transaction, the creditor may not attach unpaid earnings of the consumer by garnishment or like proceedings." Uniform Consumer Credit Code (1974) § 5.104, in 7 Uniform Laws Annotated 758 (1978).

The Comment accompanying Section 5.104 of the Uniform Act states that this Section intends to carry out the mandate of *Sniadach v. Family Finance Corp.,* 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969), which restricted creditors in their resort to prejudgment garnishment. True, the Maine counterpart to this Section enlarges the range of assets subject to the prohibition by

replacing "unpaid earnings" with "any property" and expands the subject proceedings by inserting "attachment." Yet, we cannot infer from these changes that the Maine legislature went so far beyond the stated thrust of the Uniform Act as to include within the scope of the Maine statute *every* proceeding, regardless of whether or not it is *ancillary* to some other underlying action, by which an interest in a debtor's property is sought to be obtained, or adjudicated.

Two other points reinforce this conclusion. First, several other Sections of the same part in the Maine Consumer Credit Code, all collectively regulating the procedures creditors must follow in exercising rights to enforce security interests, suggest that Section 5.104 is no impediment to the instant forcible entry and detainer action. Section 5.111(1) [7] requires that before a creditor may accelerate the maturity of the unpaid balance of a debt or repossess secured collateral, the creditor must wait 20 days after giving the debtor notice of a right to cure default, as specified in Section 5.110(1). Section 5.110(1) [8] provides that a creditor must wait at least 10 days after a

debtor's default before enforcing a security interest by either repossessing the collateral or accelerating the maturity of the debt obligation. Implicit in this notification scheme is the recognition that *independently* of instituting an action to *recover the debt,* creditors may proceed to repossess the collateral for the debt.

Second, a bill proposed in the same legislative session relating to the abolition of prejudgment proceedings sheds light on the scope of Section 5.104. The proposed bill would have prohibited prejudgment attachment, trustee process *and replevin*, except by court order in expressly specified circumstances. *See* L.D. 1538, 106th Legislature (1973). The express inclusion of replevin by the drafters of this bill suggests that unless replevin be thus expressly included, "like proceedings" following "attachment" could signify *only* such proceedings that, like attachment, are "prejudgment" in the sense that they are *ancillary* to an underlying action to recover the debt and precede the judgment to be entered in that underlying action. That, therefore, the statute was

---

7.  9 A M.R.S.A. § 5.111(1) (Supp.1979–80):

    "1.  With respect to a consumer credit transaction, except as provided in subsection 2, after a default consisting only of the consumer's failure to make a required payment, a creditor, because of that default, may neither accelerate maturity of the unpaid balance of the obligation, nor take possession of or otherwise enforce a security interest in goods that are collateral until 20 days after a notice of the consumer's right to cure, as provided in section 5.110, is given, nor with respect to a transaction subject to the Insurance Premium Finance Company Act,[1] give notice of cancellation as provided in subsection 4 until 10 days after a notice of the consumer's right to cure, as provided in section 5.110, is given. For purposes of this section, goods that are collateral shall include any right of set–off that the creditor may have. Until expiration of the minimum applicable period after the notice is given, the consumer may cure all defaults consisting of a failure to make the required payment by tendering the amount of all unpaid sums due at the time of the tender, without acceleration, plus any unpaid delinquency or deferral charges. Cure restores the consumer to his rights under the agreement as though the defaults has not occurred."

8.  9 A M.R.S.A. § 5.110(1) (Supp.1979–80):

    "1.  With respect to a consumer credit transaction, after a consumer has been in default for 10 days for failure to make a required payment and has not voluntarily surrendered possession of goods that are collateral, a creditor may give the consumer the notice described in this section. For purposes of this section, goods that are collateral shall include any right of set–off that the creditor may have.
    "A creditor gives notice to the consumer under this section by mailing the notice to the consumer's residence:
    "A.  By certified mail, return receipt requested. For purposes of this paragraph, the time when notice is given shall be the date the consumer signs the receipt or, if the notice is undeliverable, the date the post office last attempts to deliver it; or
    "B.  By ordinary mail. For purposes of this paragraph, the time when notice is given shall be the date the consumer receives it. A post office department certificate of mailing to the consumer shall be conclusive proof of receipt on the 3rd calendar day after mailing."

enacted *without* the inclusion of replevin could be deemed to confirm that "like proceedings" extends only to those proceedings that "like" attachment are ancillary to an underlying action to recover the debt.

■ By their motion to dismiss, defendants seek to attack the District Court's jurisdiction of the subject–matter on a ground different from that brought forward, sua sponte, by the Superior Court justice. Defendants contend that plaintiff's failure to attach the second page of the two–page retail sale installment contract, a page which describes aspects of the security agreement essential to making out a cause of action under Section 6012, violated the explicit mandate in Section 6012 that a

> "claimant must serve the defendant with a copy in his complaint of the security instrument ..., bill of sale or other evidence of title ...." 14 M.R.S.A. § 6012 (1980).

Defendants start from the premise that the forcible entry and detainer action is a highly summary statutory proceeding, and they reason from that premise that any failure to comply strictly with the statutory directives causes the court to lose jurisdiction over the subject–matter. Defendants cite two principal cases in support of that reasoning: *Eveleth v. Gill*, 97 Me. 315, 54 A. 756 (1903) and *Karahalies v. Dukais*, 108 Me. 527, 81 A. 1011 (1911).

Defendants' argument is unpersuasive.

In the two principal cases cited by defendants this Court addressed whether plaintiffs had pleaded and proved a sufficient factual basis to allow relief, rather than whether the court in which the action was instituted had jurisdiction of the subject–matter. In *Eveleth*, for example, plaintiff, successor in interest to a lessor, brought a forcible entry and detainer action to evict the lessee. The complaint alleged only that lessee had violated a statute called the Nuisance Act, and that such violation resulted in forfeiture of any rights the lessee had to the property. In affirming the lower court's order of *nonsuit* against the plaintiff, this Court noted that plaintiff had failed to "state, as well as prove, a case within the terms of the statute." Thus, *Eveleth* essentially held that plaintiff had failed to state a claim upon which relief may be granted, not that a particular deficiency of pleading deprived the court of subject–matter jurisdiction. This analysis applies also to *Karahalies*.

Even though in both *Eveleth* and *Karahalies* language was used suggesting "jurisdictional" difficulties, close examination of those two cases discloses that the source of the "jurisdictional" language was the earlier case of *Treat v. Bent*, 51 Me. 478 (1862). Even if in *Treat* this Court thought in terms of subject–matter jurisdiction, *Treat* involved factual circumstances and a legal infirmity so different in kind from those involved in *Eveleth* and *Karahalies*, as well as in the instant case, that we will not carry over to *Eveleth, Karahalies* or the case at bar an approach in terms of lack of subject–matter jurisdiction. Rather, we look upon plaintiff's neglect to attach the entire contract to its complaint as a failure adequately to plead a claim on which relief may be granted. On this approach, the District Court judge had authority to allow, as he did, an amendment of the complaint to add the missing page. The amendment caused no unfair prejudice to defendants; from the outset of the litigation they were fully aware of the particular contract relied on by plaintiff.

The entry shall be:

Appeal sustained; judgment of the Superior Court vacated; case remanded to the Superior Court with directions that the Superior Court enter judgment directing a remand of the case to the District Court for further proceedings in accordance with the opinion herein.

All concurring.