MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:        2022 ME 6
Docket:          Ken-21-69
Submitted
  On Briefs:     October 20, 2021
Decided:         January 25, 2022

Panel:          MEAD, GORMAN, JABAR, HUMPHREY, HORTON, and CONNORS, JJ.

ATLANTIC HOME SOLUTIONS, INC.

v.

QUANG PHAM

HORTON, J.

[¶1]  Atlantic Home Solutions, Inc. (Atlantic) appeals from a judgment of the District Court (Augusta, *Rushlau, J.*) in favor of Quang Pham on Atlantic's claim against Pham for recovery of personal property pursuant to 14 M.R.S. § 7071 (2021).  The court decided that Atlantic was not entitled to judgment because the modular home, appliances, and heating unit that Atlantic sought to recover had become part of Pham's residential lot and had ceased to be personal property subject to recovery under the statute.  We affirm the judgment.

## I.  BACKGROUND

[¶2]  After an evidentiary hearing on Atlantic's complaint, the court found the following facts, which are supported by competent evidence in the record.

2

*See Bayberry Cove Child.'s Land Tr. v. Town of Steuben*, 2013 ME 35, ¶ 5, 65 A.3d 1188. In September 2017, Atlantic entered into a written contract with Pham to sell Pham a modular home along with a heating unit and several appliances. The home was to be installed on land that Pham owned in Chelsea, where Pham hoped to move from his home in Massachusetts. The contract required payment as a prerequisite to delivery of the home and provided that title to the home would pass from Atlantic to Pham only upon either payment in full or a financial institution's acceptance of a retail installment contract.[1]

[¶3] A contractor built a foundation, installed a well and septic system, and completed other site work on Pham's land. Although Pham had neither paid Atlantic directly nor entered into a retail installment contract, Atlantic arranged for the home to be delivered and installed in June 2018. A subcontractor transported two units to the site on trailers and lifted them onto the foundation with a crane. Each unit comprised half of the home's structure and roof. The units were joined together and nailed to sills that had

---

[1] The contract also contained a provision requiring that "any and all controversies or claims arising out of or in any way relating to [the contract] be settled solely by Arbitration in accordance with the applicable rules of the American Arbitration Association then in effect and that judgment upon the award entered by arbitrators be entered in and enforceable by any court of competent jurisdiction." The effect of the arbitration provision upon Atlantic's claim under 14 M.R.S. § 7071 (2021) is not before us because neither party has invoked the provision. "'[A] party may, by engaging in litigation, implicitly waive its contractual right to arbitrate.'" *Saga Commc'ns of New Eng., Inc. v. Voornas*, 2000 ME 156, ¶ 12, 756 A.2d 954 (quoting *Navieros Inter-Americanos, S.A. v. M/V Vasilia Express*, 120 F.3d 304, 316 (1st Cir. 1997)).

been bolted to the foundation. The electrical appliances were installed and connected to the lot's electrical source, and the plumbing appliances were connected to the lot's water supply and septic system. Further finish work was needed to seal the joints where the units met.

[¶4] After installation, disputes arose between Pham and Atlantic about the quality and completeness of the home and its installation. Pham has not paid anything toward the purchase price, and he did not enter into a retail installment contract.

[¶5] Atlantic filed a complaint under 14 M.R.S. § 7071 seeking a judgment and writ of possession authorizing Atlantic to take possession of the modular home, the appliances, and the heating unit by disassembling and disconnecting them and removing them from Pham's property. The disassembly and removal process, which would take approximately one day, would involve using a reciprocating saw to cut through the fasteners used to attach the modular units to the foundation and to each other; disconnecting the wires and severing the pipes to the lot's electrical, water, and septic hookups; and lifting the separated modules, along with the appliances and heating unit, onto trailers.

[¶6] The trial court held an evidentiary hearing, at which one of Atlantic's owners and Pham testified and offered exhibits admitted in evidence, and then

issued a judgment in Pham's favor. The court determined that 14 M.R.S. § 7071, which governs "[a]ctions to recover personal property," did not provide Atlantic with an avenue for relief because the modular home and other items had become part of Pham's real estate and therefore no longer constituted personal property.[2] This determination was based on findings that (1) the modular home and other items were "physically annexed to the real estate"; (2) they and the real estate had become united in "a common enterprise, in this case human habitation"; and (3) both Atlantic and Pham "intended [for] the modular home to be permanently attached to the real estate." *See, e.g.*, *Hartford Nat'l Bank & Tr. Co. v. Harvey*, 420 A.2d 230, 235-36 (Me. 1980).

[¶7] Atlantic timely appeals.[3] *See* 14 M.R.S. §§ 1901, 7071(8) (2021); M.R. App. P. 2A, 2B(c).

## II. DISCUSSION

[¶8] Because 14 M.R.S. § 7071 applies only in actions that concern personal property, Atlantic could not obtain relief under that statute if the modular home and other items lost their character as personal property when

---

[2] The court noted that the question of whether other remedies might be available to Atlantic was not before it.

[3] Before filing its notice of appeal, Atlantic moved for additional legal conclusions and to alter or amend the judgment. The court granted the motion in part, striking part of its initial reasoning, but declined to alter its dispositive findings.

they became affixed to Pham's land. *See Harvey*, 420 A.2d at 232-36 (examining whether a mobile home constituted personal property for purposes of section 7071's predecessor). Section 7071 itself does not define "personal property," but we have long held that a three-part test applies "for determining whether personalty has become part of the realty on which it rests." *Harvey*, 420 A.2d at 235. The criteria are whether

> (1) [the personalty] is physically annexed, at least by juxtaposition, to the realty or some appurtenance thereof, (2) it is adapted to the use to which the land to which it is annexed is put, or the chattel and the real estate are united in the prosecution of a common enterprise, and (3) it was so annexed with the intention on the part of the person making the annexation to make it a permanent accession to the realty.

*Id.* (alteration and quotation marks omitted). The third criterion, that the annexor intended for the accession to be permanent,[4] holds "[s]pecial prominence," *Boothbay Harbor Condos., Inc. v. Dep't of Transp.*, 382 A.2d 848, 854 (Me. 1978), and raises a question of fact, the court's resolution of which we review for clear error, *see Harvey*, 420 A.2d at 236; *Forrest Assocs. v. Passamaquoddy Tribe*, 2000 ME 195, ¶ 9, 760 A.2d 1041. We review the trial

---

[4] "The controlling intention as to whether [personalty] becomes a part of the real estate by accession is . . . that of the annexor." *Bangor-Hydro Elec. Co. v. Johnson*, 226 A.2d 371, 378 (Me. 1967); *see Far West Modular Home Sales, Inc. v. Proaps*, 604 P.2d 452, 454-55 (Or. Ct. App. 1979) ("[W]hen annexation is made by an owner of realty, an intent to affix may more readily be found. . . . The fact that here the vendor physically placed the unit on defendants' property does not detract from defendants' status as the annexing party.").

6

court's application of the law de novo. *See Paffhausen v. Balano*, 1998 ME 47, ¶ 5, 708 A.2d 269.

[¶9] Atlantic argues that the court erred by declining to find that the home retained its character as personal property because the parties agreed, via their contract, that title would pass to Pham only upon either payment in full or acceptance of a retail installment contract.[5] The argument derives from language in *Sutton v. Frost*, 432 A.2d 1311 (Me. 1981). There, we addressed a dispute over the ownership of a prefabricated building that a tenant built on leased land for use as a real estate office before the land was sold. *Id.* at 1313. We noted the general rule that "buildings of a permanent character are a part of the realty and belong to the owner of the land on which they stand" and explained further that "[a] building of a permanent character can be held by another as personal property with the right of removal only under some agreement, express or implied, with the owner of the land." *Id.* We vacated the trial court's summary judgment in favor of the purchasing landowner, concluding that disputes of material fact existed as to whether an agreement that the building would remain the personal property of the tenant existed

---

[5] Atlantic also argues that the court should have determined that the home retained its character as personal property simply because it would be possible to disassemble the home in approximately the same amount of time that was required to assemble it. We are not persuaded by this argument and we do not address it further.

between the tenant and the original landowner, and if so, whether the purchasing landowner had actual notice of that agreement. *Id.* at 1315.

[¶10] Contrary to Atlantic's argument, *Sutton* was an application of—not a departure from—the standards expressed in *Harvey* and earlier cases. In *Harvey*, the plaintiff's predecessor-in-interest sold a mobile home to the defendants, and an installment contract provided that the home "was to remain at all times personal property" and that the plaintiff could repossess it upon default by the defendants. 420 A.2d at 232 (quotation marks omitted). After the defendants failed to make payments, the plaintiff filed a complaint under the predecessor to section 7071, 14 M.R.S.A. § 6012 (1980).[6] *Harvey*, 420 A.2d at 232-33, 233 n.2. On appeal, after reiterating the three-part standard for determining whether the mobile home had become "so related to land on which it rest[ed] as to become a part of the land," we remanded for the trial court to apply that standard because the initial record had not been developed to include any evidence about "the nature of the mobile home's physical attachment to the land[,] i.e., whether utilities were connected, whether a foundation was built and the vehicle placed thereon, whether the wheels were still in place, and so forth." *Id.* at 234-36. We also specifically rejected the

---

[6] Section 6012 was replaced by section 7071 in 2009, *see* P.L. 2009, ch. 245, §§ 5-6 (effective Sept. 12, 2009), but the substance of the statute that is relevant to this appeal remained the same.

plaintiff's argument that the contract provision stating that the mobile home

was to remain personal property was dispositive:

> The contract may establish the original intention of both parties, but it does not necessarily establish whether or not, in breach of the contract, the defendants may have subsequently affixed the mobile home to land with intention to make it a permanent accession to the land. Whether defendants subsequently so acted remains a question of fact to be decided on the basis of all the relevant circumstances.

*Id.* at 236.

[¶11] In *Sutton*, one of the central factual issues was similar: whether the

tenant who had annexed the building to the real estate had done so based on an

agreement that the annexation would be permanent and would thereby pass

title to the building to the owner of the real estate. 432 A.2d at 1315. We did

not overrule *Harvey* in discussing that issue. In fact, we cited *Harvey* with

approval, stating that the factors for "determining whether an implied

agreement exists that a building remain personalty are . . . the same factors

involved in determining whether any personalty has become part of the realty

on which it rests." *Id.* at 1314 n.4. The import of our decision in *Sutton* is that

evidence of an agreement that personalty annexed to another's land remain

personalty is relevant to the question of the annexor's intent but not

determinative of the question. *Id.* at 1313-15. Other evidence relevant to that

fact-sensitive question includes evidence concerning "the structure and mode of attachment, the purpose and use for which the annexation has been made[,] and the relation and use of the party making it."[7]  *Id.* at 1314 n.4 (quotation marks omitted); *see Harvey*, 420 A.2d at 235-36 (rejecting the argument "that the issue of the parties' intention [was] conclusively settled by the language in the contract" and suggesting that evidence relevant to the question of intent would include "testimony about the nature of the mobile home's physical attachment to the land[,] i.e., whether utilities were connected, whether a foundation was built and the vehicle placed thereon, whether the wheels were still in place, and so forth").

[¶12]   Here, the trial court found that notwithstanding the contract language concerning transfer of title upon payment, both Atlantic and Pham "intended [for] the modular home to be permanently attached to the real estate."[8]  That finding is supported by the evidence that the modular home was

_____

[7]  Moreover, as we explained in *Sutton*, the law favors an inference that the annexation was not intended to be permanent where the parties are landlord and tenant, especially where the tenant's building is a trade fixture. *See Sutton v. Frost*, 432 A.2d 1311, 1313-14 (Me. 1981) ("Where the parties are related as landlord and tenant, the law tends to infer that annexations made by the tenant are intended to be temporary, since it is unlikely that the tenant meant to deprive himself of his property. This inference is especially strong where the annexation is a trade fixture, i.e., property which a tenant has placed on rented real estate to advance the business for which the realty is leased." (citations omitted)); *see also* 8 Michael A. Wolf, *Powell on Real Property* § 57.05[2][b] (2022).  Both of those factors were present in *Sutton* but are absent here.

[8]  Atlantic does not challenge the court's additional findings that the home and other items were "physically annexed to the real estate" and that they and the real estate had become united in pursuit

installed for Pham's use as a residence on Pham's property, not for Atlantic's continued use; that the contract required payment as a prerequisite to delivery of the home; that the home was nailed to a pre-dug foundation and connected to utilities and a well with durable materials; that finish work was required to seal the joints where the two units met; and that Atlantic had never disassembled a modular home that it had installed pursuant to a sales contract. Although each case is fact-specific, other courts have reached or affirmed similar findings based on similar evidence. *See, e.g.*, *Far West Modular Home Sales, Inc. v. Proaps*, 604 P.2d 452, 454-55 (Or. Ct. App. 1979); *Prospecting Unlimited, Inc. v. Norberg*, 376 A.2d 702, 705 (R.I. 1977); *Hall v. U.S. Bank Tr., N.A.*, No. 1:14-cv-615, 2014 U.S. Dist. LEXIS 190150, at *13-15 (W.D. Mich. Oct. 14, 2014).

[¶13] Because the trial court did not misapply the law and its findings are supported by the record evidence, we affirm the judgment. We note that our specific conclusion means only that Atlantic cannot obtain relief pursuant to section 7071, which authorizes the District Court to order the return of personal property. *See* 14 M.R.S. § 7071(6). We are not here called upon (nor able, on the record before us) to examine whether Atlantic could obtain relief

---

of the "common enterprise" of "human habitation." *See Hartford Nat'l Bank & Tr. Co. v. Harvey*, 420 A.2d 230, 235 (Me. 1980). These findings are supported by the record.

by pursuing other remedies.  *See* 14 M.R.S. § 7071(10) ("The remedy provided in [section 7071] is a remedy in equity and is in addition to and not in lieu of another remedy.").

The entry is:

Judgment affirmed.

_____

Jason Dionne, Esq., Dionne Law, P.A., Auburn, for appellant Atlantic Home Solutions, Inc.

Quang Pham did not file a brief

Augusta District Court docket number SA-2019-578
FOR CLERK REFERENCE ONLY